COLLINS v. COMMONWEALTH OF KENTUCKY.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 35.  Submitted April 22, 1914.—Decided June 22, 1914.

A state penal statute which prescribes no standard of conduct that it is possible to know violates the fundamental principles of justice embodied in the conception of due process of law.

*International Harvester Co.* v. *Kentucky, ante,* p. 216, followed to the effect that the provisions in regard to pooling crops in chapter 117 of the Laws of Kentucky of 1906 as amended by chapter 8 of the Laws of 1908, as construed by the courts of that State, in connection with the anti-trust act of 1890 and § 198 of the Kentucky constitution of 1891 do not prescribe any standard of conduct, and there-

fore amount to a denial of due process of law under the Fourteenth Amendment.

141 Kentucky, 565, reversed.

THE facts, which involve the constitutionality of provisions of the statutes of Kentucky of 1906, permitting combinations or pools of tobacco and other farm products, are stated in the opinion.

*Mr. E. L. Worthington* and *Mr. J. M. Collins* for plaintiff in error.

*Mr. James Garnett, Attorney General of the State of Kentucky,* for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The plaintiff in error, Patrick Collins, and other tobacco growers of Mason County, Kentucky, entered into a pooling contract with the Burley Tobacco Society and the Mason County Board of Control whereby they consigned to the Society their respective crops of tobacco (raised in the year 1907) to be sold by the Society as their agent upon such terms as it should prescribe, but not less than a minimum price. Because Collins disposed of his crop, without the consent of the agents of the pool, he was indicted. He demurred to the indictment upon both state and Federal grounds, setting forth as the latter that the statutes under which he was prosecuted contravened the, Fourteenth Amendment of the Federal Constitution, in that they denied to him the equal protection of the laws and deprived him of liberty and property without due process of law, and also were repugnant to the commerce clause and the Federal Anti-trust Act of July 2, 1890, c. 647, 26 Stat. 209. The demurrer was overruled and trial was had. There was evidence that the tobacco had been removed by Collins to Cincinnati, Ohio, and there sold. Collins was found guilty and sen-

tenced to pay a fine.   The Court of Appeals having affirmed the judgment (141 Kentucky, 564), this writ of error is prosecuted.

The conviction was under the provisions of § 3941a of the Kentucky statutes being the act of March 21, 1906 (Laws 1906, c. 117) as amended by the act of March 13, 1908 (Laws 1908, c. 8).   The act of 1906 permitted persons to 'pool or combine' the crops of 'tobacco, wheat, corn, oats, hay or other farm products' raised by them 'for the purpose of obtaining a better or higher price therefor than could or might be obtained by selling said crops separately or individually.'   The persons so agreeing were also allowed to select agents to receive and to sell or dispose of the crops, so placed, in order to accomplish the object of the combination.   The amendment of 1908, in addition to giving remedies by way of injunction and damages, provided that the agent 'when so selected' should have 'the sole right to sell said crop so pooled or combined,' that it should be unlawful 'for any owner of such crop to sell or dispose of same and for any person to knowingly purchase the same without the written consent of such agent,' and that 'upon conviction thereof,' a fine should be imposed.

This statute, as construed by the Court of Appeals of Kentucky, is not to be regarded as an independent enactment but is to be viewed in connection with the Kentucky anti-trust act of 1890 (Ky. Stats., § 3915) and in the light of § 198 of the Kentucky constitution adopted in 1891.   The statute of 1890 forbade the formation of pools or combinations for the purpose of regulating, controlling or fixing the price of merchandise or property of any kind. Section 198 of the constitution provided that it should be the duty of the General Assembly from time to time to enact such laws as might be necessary "to prevent all trusts, pools, combinations or other organizations from combining to depreciate below its real value any article,

or to enhance the cost of any article above its real value."
It was held that the constitutional provision did not repeal
the act of 1890 (*Commonwealth* v. *Grinstead,* 108 Ken-
tucky, 59); and in *Commonwealth* v. *International Har-
vester Co.,* 131 Kentucky, 551, it was further held (approv-
ing the views expressed in *Owen County Burley Tobacco
Society* v. *Brumback,* 128 Kentucky, 137) that the act
of 1906 did not violate § 198 of the constitution in as
much as it 'did not authorize a pool to enhance the cost
of crops above their real value,' but that the effect of the
last mentioned act 'when considered in connection with
the act of 1890, § 198 of the Constitution and the Four-
teenth Amendment to the Constitution of the United
States, was to confer, not only upon the farmer, but upon
all others the right to pool their products, skill, or capital
for the purpose of obtaining the real value thereof.' See
*Commonwealth* v. *Hodges,* 137 Kentucky, 233, 241; *Inter-
national Harvester Co.* v. *Commonwealth,* 144 Kentucky,
405, 410; 147 Kentucky, 557, 559; 147 Kentucky, 564,
565. Section 3941*a* is treated as an amendment to § 3915;
and, as was said in *Commonwealth* v. *International Har-
vester Co.,* 147 Kentucky, 573, 575, the state court "up-
held the validity of both statutes, but also held that the
last amended or modified the first to the extent of legaliz-
ing pools, trusts, combinations, agreements, etc., but
that both statutes are so governed and restricted in their
operation by § 198, Constitution, as that they cannot
be held to allow, but, on the contrary, prohibit persons,
associations, co-partnerships or corporations, engaged or
participating in a pool, trust, combination or agreement,
by means thereof, to fix, control or regulate the price of
any commodity or article by raising or depreciating, or
attempting to raise or depreciate, it above or below its
real value."

As the present prosecution was under this legislation,
thus construed as constituting in effect a single act, the

question presented is the same as that decided by this court in *International Harvester Co.* v. *Kentucky* (*ante*, p. 216). It was found that the statute in its reference to 'real value' prescribed no standard of conduct that it was possible to know; that it violated the fundamental principles of justice embraced in the conception of due process of law in compelling men on peril of indictment to guess what their goods would have brought under other conditions not ascertainable.

The Harvester Company was prosecuted for being a party to a price-raising combination; Collins, for breaking a combination agreement and selling outside the pool which he had joined. With respect to each, the test of the legality of the combination was said to be whether it raised prices above the 'real value.' If it did—in Collins' case—he would be subject to penalties for remaining in the combination; if it did not, he would be punishable for not keeping his tobacco in the pool. He was thus bound to ascertain the 'real value'; to determine his conduct not according to the actualities of life, or by reference to knowable criteria, but by speculating upon imaginary conditions and endeavoring to conjecture what would be the value under other and so-called normal circumstances with fair competition, eliminating the abnormal influence of the combination itself, and of all other like combinations, and of still other combinations which these were organized to oppose. The objection that the statute, by reason of its uncertainty, was fundamentally defective was as available to Collins as it was to the Harvester Company.

In this view, it is unnecessary to consider the objection under the commerce clause or the alleged conflict, as to interstate transactions, with the Federal Anti-trust Act.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*